UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------x
BRIAN ANTHONY,

        Plaintiffs,

-against-

THE CITY OF NEW YORK, THE
NEW YORK CITY POLICE
DEPARTMENT, WILLIAM PARKER,
JOSE DIGENNARO, KELLY BUSBY,
GARY AARONSON, and ANTONIO
HERNANDEZ,

        Defendants.
---------------------------------------------------x

**MEMORANDUM AND ORDER**

12-CV-4662 (FB) (SMG)

*Appearances:*
*For the Plaintiff:*
BRYAN J. SWERLING
15 Maiden Land, Suite 2005
New York, NY 10038

*For the Defendants:*
ZACHARY CARTER
Corporation Counsel of the
City of New York

By:   MELISSA WACHS
NYC Law Department
100 Church Street, 3rd Floor
New York, NY 10007

**BLOCK, Senior District Judge:**

On June 18, 2015, the Court heard oral argument on Defendants' motion for summary judgment. For the reasons stated in open court and set forth below, Defendants' motion is denied in part and granted in part.

# I.

## A. Undisputed facts

On the afternoon of October 11, 2001, Anthony was inside Smiley's Number 2 Deli, located on Kissena Boulevard in Queens. While Anthony was inside, three NYPD officers in plain clothes – Sergeant DiGennaro ("DiGennaro"), Officer Parker ("Parker"), and Sergeant Busby ("Busby") – drove up to the deli in an unmarked police car and parked outside.

DiGennaro, Parker, and Busby then entered the deli and approached Anthony. After exchanging words with Anthony, DiGennaro frisked him, placed him in handcuffs, and searched him. At some point during this incident, two other NYPD officers – Officer Aaronson ("Aaronson") and Lieutenant Hernandez ("Hernandez") – arrived at the scene and entered the deli. Anthony was arrested for possession of 41 bags of crack cocaine with intent to sell.

On July 11, 2012, Anthony accepted an Adjournment in Contemplation of Dismissal ("ACD") in Queens County Criminal Court. On January 10, 2013, Anthony's criminal charges were dismissed.

## B. Disputed facts

The parties dispute the circumstances leading up to Anthony's arrest. According to Defendants, prior to encountering Anthony, DiGennaro received a phone call from

a confidential informant ("CI") who told him that Anthony was selling drugs at a location near the deli. *See* Defs.' Exhibit I (Deposition of DiGennaro) at 25:15-23. However, Anthony contends that DiGennaro initially told him that he fit the description of a suspect for a robbery. *See* Defs.' Exhibit H (Deposition of Anthony) at 43:7-12. In addition, non-party witness Ziomaro Medina ("Medina"), Anthony's girlfriend, stated in a deposition that she was within earshot of DiGennaro at the time of the arrest and also heard DiGennaro state that "we just got a call . . . that someone was assaulted with a knife from a black male." *See* Pl.'s Exhibit D (Deposition of Medina) at 21:2-4.

The parties also dispute whether Anthony possessed drugs prior to his arrest. According to Defendants, Anthony initially told DiGennaro that he had marijuana on him, at which point DiGennaro searched him, discovered 41 bags of crack cocaine inside his boxer shorts, and vouchered the bags. *See* Defs.' Exhibit I (Deposition of DiGennaro) at 44:3-4, 45:21-23; Defs.' Exhibit B (NYPD Property Clerk Invoice). In contrast, Anthony denies telling DiGennaro that he had marijuana on him, denies possessing crack cocaine in his boxer shorts, and claims that the drugs were planted on him by one of the officers during the search. *See* Pl.'s Exhibit C (Deposition of Anthony) at 46:4-9, 64:17-65:18.

Finally, the parties dispute what happened during DiGennaro's search. According to Anthony, the three NYPD officers pushed him to the ground after

handcuffing him, pulled down his pants and underwear, grabbed a pair of plastic gloves from the deli counter, and searched his buttocks and genitals for contraband in the middle of a crowded deli. *See* Pl.'s Mem. of L. at 2-3. Anthony also alleges that one of the officers punched him in the head while he was on the ground. *See* Pl.'s Exhibit C (Deposition of Anthony) at 74:1-3. Defendants deny these allegations. *See* Answer ¶¶ 34-38.

## II.

Anthony brings claims for: (1) illegal search and seizure; (2) excessive force; (3) false arrest; (4) conspiracy; (5) delay and denial of medical treatment; (6) municipal liability under *Monell* and under respondeat superior; (7) negligence; (8) negligent infliction of emotional distress ("NIED"); (9) intentional infliction of emotional distress ("IIED"); and (10) municipal negligence. Defendants move for partial summary judgment on all of Anthony's claims except (1) illegal search and seizure and (2) excessive force.

## A.

The Court denies summary judgment on the following claims:

1. <u>False arrest</u>: Factual issues preclude summary judgment on Anthony's false arrest claim. Since Anthony was placed in handcuffs *prior* to DiGennaro's search for drugs,

there is a triable issue of fact as to when an "arrest" occurred for purposes of § 1983.[1] *See Posr v. Doherty*, 944 F.2d 91, 99 (2d Cir. 1991) ("The issue of precisely when an arrest takes place is a question of fact."). Even if Anthony was only arrested *after* DiGennaro's search, factual disputes nonetheless preclude summary judgment on his false arrest claim because Anthony claims that the officers planted crack cocaine on him. *See Blake v. Race*, 487 F. Supp. 2d 187, 202 (E.D.N.Y. 2007) ("The standard rule is that credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.") (internal punctuation and quotation marks omitted).

2. <u>Qualified immunity</u>: Triable issues of fact exist as to the extent to which Sergeant Busby ("Busby"), Officer Aaronson ("Aaronson"), and Lieutenant Hernandez ("Hernandez") participated in Anthony's arrest. Busby, Aaronson, and Hernandez are therefore not entitled to qualified immunity on Anthony's false arrest claim.

3. <u>Delay and denial of medical treatment</u>: While Anthony may not introduce medical records into evidence as a result of Magistrate Judge Gold's September 20, 2013 order – and indeed concedes that no such medical records exist – a triable issue of fact nonetheless exists as to whether Anthony incurred injuries during the arrest and

---

[1] If Anthony was arrested *prior* to DiGennaro's search, the subsequent discovery of crack cocaine would not defeat his false arrest claim, since "[i]t is . . . axiomatic that subsequently discovered evidence cannot be used to cure an arrest that was made without probable cause." *Mejia v. City of New York*, 119 F. Supp. 2d 232, 253 (E.D.N.Y. 2000).

whether Defendants were deliberately indifferent to those injuries.

4. <u>IIED</u>: Anthony's state law claims do not fail simply because he failed to name individual defendants in his Notice of Claim. *See Bailey v. City of New York*, No. 14-CV-2091, 2015 WL 220940, at *22 (E.D.N.Y. Jan. 15, 2015) (Weinstein, J.). Further, triable issues of fact exist as to whether Defendants' search of Anthony inside the deli constituted "extreme and outrageous conduct" sufficient to justify relief under IIED. *See Stuto v. Fleishman*, 164 F.3d 820, 828 (2d Cir. 1999).

**B.**

The Court grants summary judgment on the following claims:

1. <u>Conspiracy</u>: "Under the intracorporate conspiracy doctrine, the officers, agents, and employees of a single corporate entity, each acting within the scope of her employment, are legally incapable of conspiring together." *Little v. City of New York*, 487 F. Supp. 2d 426, 441-42 (S.D.N.Y. 2007) (internal quotation marks omitted). While an exception to the intracorporate conspiracy doctrine exists where the individuals are "motivated by an independent personal stake in achieving the corporation's objective," *id.* at 442, Anthony makes no such allegations here. Accordingly, summary judgment in favor of Defendants is warranted.

2. <u>Municipal liability under *Monell* and respondeat superior</u>: Anthony concedes that the NYPD maintains a Patrol Guide providing that removal of undergarments during a search must only occur in a secure area and in utmost privacy. This

6

concession dooms Anthony's *Monell* claim, since "both the Supreme Court and the Second Circuit have made it clear that, without more, a city would not automatically be liable under § 1983 if one of its employees applied an otherwise appropriate policy in an unconstitutional manner." *Phelan ex rel. Phelan v. Torres*, 843 F. Supp. 2d 259, 276 (E.D.N.Y. 2011).

Anthony also alleges that the City of New York is liable under a theory of respondeat superior. To the extent that this claim is based on § 1983, that claim must also be dismissed, since "[a] municipality . . . may not be held liable in a § 1983 action for the conduct of a lower-echelon employee solely on the basis of respondeat superior." *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 122 (2d Cir. 1991). To the extent this claim is founded on New York law, the claim may proceed, since under New York law, "municipalities may be vicariously liable for . . . intentional torts of police officers." *Fera v. City of Albany*, 568 F. Supp. 2d 248, 261 (N.D.N.Y. 2008) (citing *Schuster v. City of New York*, 5 N.Y.2d 75, 81–82 (1958)).

3. <u>Negligence</u>: "Under New York law, a plaintiff may not recover under general negligence principles for a claim that law enforcement officers failed to exercise the appropriate degree of care in effecting an arrest or initiating a prosecution." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994). Anthony's negligence claim must therefore be dismissed.

4. <u>NIED</u>: Since NIED is a species of common-law negligence, this claim also fails. *See Greenaway v. Cnty. of Nassau*, No. 11-CV-2024, 2015 WL 1509486, at *11 (E.D.N.Y. Mar. 31, 2015) (granting summary judgment in favor of police officers on NIED claim).

5. <u>Municipal negligence</u>: "To maintain a claim against a municipal employer for the negligent hiring, training, and retention of a tortfeasor under New York law, a plaintiff must show that the employee acted outside the scope of her employment." *Velez v. City of New York*, 730 F.3d 128, 136-37 (2d Cir. 2013) (internal quotation marks and citation omitted). Since the NYPD officers were clearly acting within the scope of their employment by conducting an arrest, summary judgment in favor of Defendants is warranted.

## III.

For the foregoing reasons, the Court denies summary judgment as to Anthony's claims for (1) false arrest, (2) delay and denial of medical treatment, and (3) IIED. The Court denies qualified immunity for Busby, Aaronson, and Hernandez.

The Court grants summary judgment as to Anthony's claims for (1) conspiracy, (2) municipal liability under *Monell* and respondeat superior, (3) negligence, (4) NIED, and (5) municipal negligence. The Clerk is directed to dismiss those claims with prejudice.

Finally, the NYPD is dismissed from this lawsuit. *See Jenkins v. City of New*

8

*York*, 478 F.3d 76, 93 (2d Cir. 2007) ("[T]he NYPD is a non-suable agency of the City.").

        **SO ORDERED.**

                                        /S/ Frederic Block
                                        FREDERIC BLOCK
                                        Senior United States District Judge

Brooklyn, New York
June 18, 2015